1

2

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

3

4

5

6

7

8

9

| | |
|---|---|
| DAVID E. JENSEN,<br><br>                    Plaintiff,<br><br>          v.<br><br>QUALITY   LOAN   SERVICE   CORP;<br>WASHINGTON   MUTUAL   BANK,   FA;   JP<br>MORGAN CHASE BANK, NA; and DOES 1-<br>10, INCLUSIVE,<br><br>                    Defendants. | 09-CV-01789-OWW-DLB<br><br>MEMORANDUM   DECISION   AND<br>ORDER RE: DEFENDANT'S MOTION<br>TO   DISMISS   OR,   IN   THE<br>ALTERNATIVE,   FOR   A   MORE<br>DEFINITE STATEMENT |

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**I.  INTRODUCTION**

Before  the  court  is  a  motion  to  dismiss  or,  in  the alternative,  a  motion  for  a  more  definite  statement  filed  by Defendant JPMorgan Chase Bank, NA ("Defendant" or "JPMorgan").[1] The motion is directed at all claims asserted by *pro se* Plaintiff David  E.  Jensen  ("Plaintiff")  in  his  First  Amended  Complaint ("FAC")  for  damages,  declaratory  and  injunctive  relief.    The following  background  facts  are  taken  from  the  FAC  and  other documents on file in this case.

**II.  BACKGROUND**

A.    <u>General Background And Procedural History</u>

This is a mortgage fraud case concerning Plaintiff's residence in Bakersfield, California.  On or about June 26, 2006, Plaintiff obtained a home loan from Washington Mutual Bank, F.A. ("WAMU").

---

[1]  As stated in its moving papers, JPMorgan brings this motion on its behalf and as "an acquirer of certain assets and liabilities of Washington Mutual Bank from the FDIC acting as receiver."

1

(Doc. 2, Ex. 1 at 33.)  WAMU subsequently assigned the loan, i.e., the Note and Deed of Trust, to JPMorgan Chase. (*Id.* at 29.) On February 17, 2009, a Notice of Default was recorded indicating that Plaintiff had defaulted on his monthly loan obligations.  On May 18, 2009, a Notice of Trustee's Sale was recorded and served on Plaintiff.

On June 5, 2009, Plaintiff filed a lawsuit in the Kern County Superior Court.  On or about September 4, 2009, Plaintiff filed his FAC against WAMU, JPMorgan and Quality Loan Service Corp, which alleged several state law claims and, for the first time, a federal claim under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq.  The case was removed to federal court on the basis of federal question jurisdiction over the RESPA claim and supplemental jurisdiction over the remaining state law claims.

B.    The FAC

The FAC alleges claims for: (i) declaratory relief; (ii) fraud; (3) violation of RESPA; (4) reformation; (5) "to quiet title and set aside foreclosure"; (5) violation of California's Unfair Competition Law, Business & Professions Code § 17200; (6) violation of California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"); (6) violation of California Civil Code § 1572; (7) and "injunctive relief."  In the injunctive relief claim, Plaintiff alleges that Defendants "will foreclose" upon the property and that "injunctive relief is necessary to enjoin defendants from foreclosing."  These allegations reveal that a foreclosure sale of the property has not occurred.

Although each claim in the FAC appears to be asserted against JPMorgan, there are very few allegations which identify JPMorgan's

2

role in the events pled.  Much of the FAC refers to "defendants" globally.

C.   **JPMorgan's Motion**

JPMorgan moves to dismiss all claims in Plaintiff's FAC, raising various legal arguments as to why each claim fails.  A general premise running through many of its arguments is that Plaintiff fails to allege how JPMorgan was involved in the alleged illegality, making it difficult to discern the basis for each claim as to JPMorgan.  If dismissal is not appropriate, JPMorgan requests a more definite statement.

Originally, Plaintiff did not file an opposition to the motion.  He, however, appeared at the original hearing scheduled for this motion and orally requested time to file an opposition brief.  Plaintiff's request was granted and he filed an opposition.

## III.   STANDARDS OF DECISION

A.   **Rule 12(b)(6)**

Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To sufficiently state a claim to relief and survive a 12(b)(6) motion, the pleading "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id*.  Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.  In

3

other words, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted).  The Ninth Circuit has summarized the governing standard, in light of *Twombly* and *Iqbal*, as follows: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

This standard, which is derived from Rule 8, applies to pleadings drafted by attorneys as well as *pro se* litigants. *See Iqbal,* 129 S. Ct. at 1953 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions.'" (quoting Fed. R. Civ. P. 1)); *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) (applying *Twombly* to *pro se* complaint); *Wisdom v. Katz*, 308 F. App'x 120, 121 (2009) (same).  Nevertheless, when reviewing the sufficiency of a complaint drafted by a *pro se* litigant, the pleading is to be "liberally construed" and viewed "less stringent[ly]" than formal pleadings prepared by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted).

Apart from factual insufficiency, a complaint is also subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri*, 901 F.2d at 699, or where the allegations "show that relief is barred" for some legal reason, *Jones v. Bock*, 549 U.S. 199, 215 (2007).  In deciding whether to grant a motion to

**4**

dismiss, the court must accept as true all "well-pleaded factual allegations" in the pleading under attack. *Iqbal*, 129 S. Ct. at 1950. A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see, e.g., Doe I v. Wal-Mart Stores, Inc*., 572 F.3d 677, 683 (9th Cir. 2009).

B.   Rule 9(b)

In terms of factual sufficiency, Rule 9(b), when it applies, imposes an elevated pleading standard. Rule 9(b) provides:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

"To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud . . . ." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks omitted). Allegations of fraud must include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Id*. (internal quotation marks omitted). The "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks omitted). A plaintiff alleging fraud "must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (emphasis

5

and internal quotation marks omitted).

C.   **Rule 12(e)**

"If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). Under Rule 12(e), "[a] party may move for a more definite statement of a pleading" when it is "so vague or ambiguous that the party cannot reasonably prepare a response."

A Rule 12(e) motion is proper only if the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted, i.e., so vague that the defendant cannot begin to frame a response. *See Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F.Supp. 940, 949 (E.D. Cal. 1981). The motion must be denied if the complaint is specific enough to notify defendant of the substance of the claim being asserted. *See Bureerong v. Uvawas*, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996); *see also San Bernardino Pub. Employees Ass'n v. Stout*, 946 F. Supp. 790, 804 (C.D. Cal. 1996) ("A motion for a more definite statement is used to attack unintelligibility, not mere lack of detail, and a complaint is sufficient if it is specific enough to apprise the defendant of the substance of the claim asserted against him or her.").

### IV. DISCUSSION AND ANALYSIS

A.   **Declaratory Relief**[2]

---

[2] Because Plaintiff's FAC was filed in state court, his declaratory relief claims are construed as brought under California law.

6

In what may be a drafting mistake, Plaintiff alleges two separate claims for declaratory relief relating to his residence and the anticipated foreclosure.  Although pled as two separate claims, they both request "a judicial determination of Defendants rights, obligations and duties, and a declaration as to who owns Plaintiff's Subject Property."  Because these claims request the same declaratory relief (and share the same defects), these claims will be referred to in the singular, i.e., as one claim for declaratory relief.

Declaratory relief "operates prospectively, and not merely for the redress of past wrongs." *Babb v. Superior Court*, 3 Cal. 3d 841, 848 (1971); *see also County of San Diego v. California*, 164 Cal. App. 4th 580, 607 (2008).  A declaratory relief action "serves to set controversies at rest before they lead to repudiation of obligations, invasion of rights or commission of wrongs; in short, the remedy is to be used in the interests of preventive justice, to declare rights rather than execute them." *Babb*, 3 Cal. 3d at 848 (internal quotation marks omitted).  As recently stated in *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 647 (2009) (internal citations and quotation marks omitted):

> The purpose of a declaratory judgment is to serve some practical end in quieting or stabilizing an uncertain or disputed jural relation. Another purpose is to liquidate doubts with respect to uncertainties or controversies which might otherwise result in subsequent litigation. One test of the right to institute proceedings for declaratory judgment is the necessity of present adjudication as a guide for plaintiff's future conduct in order to preserve his legal rights.

Courts have recognized that where "a party has a fully matured cause of action for money, the party must seek the remedy of damages, and not pursue a declaratory relief claim." *Canova v. Trs.*

*of Imperial Irrigation Dist. Employee Pension Plan*, 150 Cal. App. 4th 1487, 1497 (2007); *see also Gafcon, Inc. v. Ponsor & Assocs.*, 98 Cal. App. 4th 1388, 1404 (2002).  Similarly, where a plaintiff has alleged a substantive cause of action, a declaratory relief claim should not be used as a superfluous "second cause of action for the determination of identical issues" subsumed within the first. *Hood v. Superior Court*, 33 Cal. App. 4th 319, 324 (1995) (internal quotation marks omitted); *see also Gen. of Am. Ins. Co. v. Lilly*, 258 Cal. App. 2d 465, 470 (1968).

Plaintiff's claim for declaratory relief fails for at least two reasons.  First, as JPMorgan correctly argues, the declaratory relief claim is entirely duplicative of Plaintiff's other claims. For example, a resolution of Plaintiff's quiet title claim will necessarily determine "who owns Plaintiff's Subject property." Plaintiff's separate declaratory relief claim should not be used, as here, to determine identical issues subsumed within other claims. *See Camillo v. Wash. Mut. Bank, F.A.*, No. 1:09-CV-1548 AWI SMS, 2009 WL 3614793, at *13 (E.D. Cal. Oct. 27, 2009) (dismissing declaratory relief claim as redundant where there was no reason to believe it would "resolve any issues aside from those already addressed by the substantive claims" in the case) (internal quotation marks omitted).

Second, and more fundamentally, as revealed in Plaintiff's opposition brief, the entire premise of Plaintiff's declaratory relief claim is flawed.  Plaintiff argues that declaratory relief is warranted because defendants "are implementing a foreclosure proceeding" prematurely and "without authority" because they "fail[] to have possession of the promissory note which underlies

the collateral." (Doc. 15 at 4.)   This argument lacks merit. California law "does not require possession of the note as a precondition to non-judicial foreclosure under a Deed of Trust." *Alicea v. GE Money Bank*, No. C. 09-00091 SBA, 2009 WL 2136969, at *2 (N.D. Cal. July 16, 2009); *see also Molina v. Wash. Mut. Bank*, No. 09-CV-00894-IEG (AJB), 2010 WL 431439, at *6 (S.D. Cal. Jan. 29, 2010 ) (non-judicial foreclosure under California law does "not require possession and production of the note"); *Castaneda v. Saxon Mortgage Servs., Inc.,* __ F. Supp. 2d __, 2009 WL 4640673, at *7 (E.D. Cal. 2009) ("Under California law, there is no requirement for the production of the original note to initiate a non-judicial foreclosure*."); Nool v. HomeQ Servicing*, 653 F. Supp. 2d 1047, 1053 (E.D. Cal. 2009) ("It is well-established that non-judicial foreclosures can be commenced without producing the original promissory note."); *Connors v. Home Loan Corp*., No. 08cv1134-L(LSP), 2009 WL 1615989, at *9 (S.D. Cal. June 9, 2009) ("[U]nder Civil Code section 2924, no party needs to physically possess the promissory note.") (internal quotation marks omitted).[3]

Plaintiff's claim for declaratory relief is DISMISSED WITH LEAVE TO AMEND.

**B.   Fraud**

Plaintiff has alleged two fraud claims, both of which are

---

[3] Plaintiff's discussion of *judicial* foreclosure and the California Commercial Code is beside the point. *See Pok v. Am. Home Mortgage Servicing, Inc*., No. CIV 2:09-2385 WBS EFB, 2010 WL 476674, at *7 (E.D. Cal. Feb. 3, 2010) ("[S]ection 3301 [of the California Commercial Code] reflects California's adoption of the Uniform Commercial Code, and does not govern non-judicial foreclosures, which is governed by California Civil Code section 2924.").

subject to, and fail to meet, Rule 9(b)'s elevated pleading standard.

### 1.   First Fraud Claim

Plaintiff's first fraud claim contains allegations regarding a fraudulent "scheme" and instances of false representations and/or omissions.   With respect to the fraudulent scheme, Plaintiff alleges:

> 24.   Plaintiff allege[s] Defendants, and each of them, were engaged in an illegal scheme the purpose of which was to execute loans secured by real property in order to make commissions, kick-backs, illegal undisclosed yield spread premiums, and undisclosed profits by sale of any instruments arising out of the transaction.
>
> . . . .
>
> 43.   Plaintiff is informed and believe[s] and thereupon allege[s] that Defendants, and each of them, entered into a fraudulent scheme, the purpose of which was to make a loan modification to Plaintiff, which Defendants, and each of them, were keenly aware that Plaintiff could not afford, at a cost way above the then prevailing market rate, made loans to Plaintiff and falsely represented to Plaintiff that they could not qualify for any other financing, that Plaintiff could not qualify under any reasonably [sic] underwriting guidelines, that such scheme was devised to extract illegal and undisclosed compensation from Plaintiff.
>
> . . . .
>
> 55. Plaintiff is informed and believe[s] and thereupon allege[s] that Defendants, and each of them, entered into a fraudulent scheme, the purpose of which was to make a loan to Plaintiff, which Defendants, and each them, were keenly aware that Plaintiff could not afford, at a cost way above the then prevailing market rate, made loans to Plaintiff and falsely represented to Plaintiff that they could not qualify for any other financing, that Plaintiff could not qualify under any reasonably underwriting guidelines, that such scheme was devised to extract illegal compensation from Plaintiff by virtue of an undisclosed yield spread premium and which Defendants, and each of them, shared in some presently unknown percentage.

10

As to JPMorgan, the complaint's allegations do not specify the "who, what, when, where, and how of the misconduct charged." *Kearns*, 567 F.3d at 1124 (internal quotation marks omitted).  The complaint provides no particular details on *what* specific role JPMorgan played in the fraudulent scheme, or *when* and *where* the scheme occurred. *See Swartz,* 476 F.3d at 764-65 (concluding that, in a fraud suit involving multiple defendants, a plaintiff must "identif[y] the role" each defendant played "in the alleged fraudulent scheme," informing "each defendant separately of the allegations surrounding his alleged participation in the fraud") (alteration in original) (internal quotation marks omitted); *Vess*, 317 F.3d at 1106 (concluding that a fraudulent conspiracy claim failed to satisfy Rule 9(b) because, among other things, the pleading failed to "provide the particulars of when, where, or how the alleged conspiracy occurred").  In addition, the complaint fails to provide the details on the specific misrepresentation(s) involved in the fraudulent scheme.

The FAC does contain some allegations regarding alleged representations that were made relating to Plaintiff's loan.  The extent to which these representations were made in connection with, or apart from, the fraudulent scheme is unclear:

> 26.  Plaintiff allege[s] that Defendant, and each of them, presented a loan to Plaintiff whereby their [sic] represented that they did qualify for underwriting, and the loan was within Plaintiff'[s] personal financial needs and limitations given the confidential information that Plaintiff shared with Defendants.

> 27.  Plaintiff allege that Defendants, and each of them, had a duty to disclose the true cost of the loan which was made to Plaintiff, and the fact that Plaintiff could not afford the loan in the first instance.

11

28.   Plaintiff acquired the foregoing property by virtue of the said funding based on the representations of Defendants, and each of them, that the loan was the best they could obtain for him, and that the loan was well within Plaintiff'[s] financial needs and limitations.

29.   Plaintiff is informed and believe[s] and thereupon allege that Defendants, and each of them, represented to Plaintiff that Defendants, and each of them, were working for the benefit of Plaintiff and in their particular best interest to obtain for them the best loan and at the best rates.

30.   That at the time Defendants, and each of them, made the foregoing false representations to Plaintiff they knew that they were untrue and that the representations were material misrepresentations.

These allegations fail to meet Rule 9(b)'s requirements.   Even making the assumption that JPMorgan, the entity which allegedly received the loan through an assignment, engaged in all of the alleged false representations, including falsely representing that the loan was "within Plaintiff'[s] personal financial needs and limitations," the FAC does not include the necessary particulars. Missing from the FAC are facts that specify, and tie together, *when* these false representations were made, *where* these representations were made, *what* specifically was stated or represented that is false, and *why* each alleged misrepresentation is actually false.

Plaintiff's first fraud claim is insufficiently pled under Rule 9(b) and is DISMISSED WITH LEAVE TO AMEND.   Any amended pleading should address these deficiencies.

Apart from any Rule 9(b) deficiencies, JPMorgan also moves to dismiss the fraud claim on the ground that Plaintiff has failed to plead sufficient facts on certain elements of fraud including *JPMorgan's* intent to induce reliance and Plaintiff's actual

12

reliance on misrepresentation by *JPMorgan*. In California, "[t]he elements of fraud, which give[ ] rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 173 (2003) (internal quotation marks omitted).

If Plaintiff claims that JPMorgan committed its own common law fraud (apart from asserting liability on a fraudulent scheme or conspiracy theory), Plaintiff must allege facts relating to each element of fraud as to JPMorgan, including JPMorgan's intent to induce reliance and Plaintiff's actual reliance on JPMorgan's misrepresentation. To the extent Plaintiff asserts such a claim, it is insufficiently pled. There are no facts pled regarding JPMorgan's intent to induce reliance and Plaintiff's actual reliance on any misrepresentation by JPMorgan.

2.   <u>Second Fraud Claim</u>

The second fraud claims largely overlaps the first. The second fraud claim includes allegations regarding a fraudulent scheme and instances of false representations and/or omissions.

As to the fraudulent scheme, the FAC alleges:

120.   Plaintiff allege[s] that circa June, 2006, Defendants, and each of them, were engaged in an illegal scheme the purpose of which was to execute loans secured by real property in order to make commissions, kick-backs, illegal undisclosed yield spread premiums, and undisclosed profits by the sale of any instruments arising out of the transaction and to make loans to borrowers that they could not afford to repay given their stated financial situation.

13

. . . .

122.   Plaintiff allege[s] that the loans provided by Defendants, and each of them, the loan contained excessive financing was approved to allow closing costs to be financed, that Defendants failed to utilize adequate due diligence regarding Plaintiff'[s] ability to repay the loan, Defendants' as part of their continuing scheme intentionally placed Plaintiff[] in an option arm loan to the benefit of the Defendants with excessively high interest rates, Defendants failed to provide Plaintiff mandated disclosures, and Defendants repeatedly employed coercive tactics in order to force Plaintiff to sign the loan documents.

. . . .

137.   Plaintiff is informed and believe[s] that Defendants, and each of them, at the time of the execution of the Deed of Trust and Note maintained an interest in the Subject Property, however, at the time the Note and Deed of Trust were assigned to Defendant JPMORGAN, the Note was no longer negotiable and the power of sale was not conveyed during the assignment, notwithstanding the foregoing, Defendants, and each of them, foreclosed on Plaintiff'[s] Trust Deed, in concert with their scheme to defraud Plaintiff out of their property.

. . . .

140.   Plaintiff allege[s] Defendants, and each of them, intentionally and fraudulently converted Plaintiff'[s] right, title and interest to their property, and any equity therein.

Despite the repeated allegations concerning the fraudulent scheme, the FAC does not specifically identify JPMorgan's role in the fraudulent scheme, specify when and where the scheme occurred, or provide the details on the particular misrepresentation(s) involved in the fraudulent scheme.

The second fraud claim does contain some allegations regarding representations made by Defendants.  Again, the extent to which these representations were made in connection with, or apart from, the fraudulent scheme is unclear:

14

121.  On or about June 23, 2004, representatives, agents, and/or employees of Defendants, and each of them, made false representations to Plaintiff in order to fund a loan, in which Plaintiff'[s] personal residence was to be security therefore.  Plaintiff allege[s] that Defendants, and each of them, made certain representations regarding their honesty, that they were experts in obtaining loans which borrower's could afford and that they were experts in obtaining loans which borrowers could afford and that they would only offer Plaintiff a loan which was in their best interests given their credit history and financial needs and limitations and that Plaintiff could trust the representations of Defendants, and each of them. Plaintiff allege[s] that based upon the representations made by Defendants, and each of them, Plaintiff reasonably reposed their trust in Defendants' representations and disclosed their private financial information to Defendants, in order that Defendants could in keeping with their representations, find a loan which was in the best interests of Plaintiff given their financial needs and limitations.  More particularly, Defendants, and each of them, represented that they would not make a loan to Plaintiff unless he could afford the loan, and that they would not make the loan unless and until he had passed the underwriting guidelines of the lender, which further assured that the loan being offered to Plaintiff was in fact in the Plaintiff's best interests, and that the loan was within Plaintiff'[s] financial needs and limitations.

.  .  .  .

125.  Plaintiff alleges that Defendants, and each of them, presented a loan to Plaintiff whereby Defendants represented that they did qualify for ordinary underwriting, and that the loan was within Plaintiff'[s] personal financial needs and limitations given the confidential financial information that Plaintiff shared with Defendants, however, the true [sic] that the loan payments exceeded Plaintiff'[s] established income.

126.  Plaintiff allege[s] that Defendants, and each of them, had a duty to disclose the true cost of the loan which was made to Plaintiff, and that the fact that Plaintiff could not afford the loan in the first instance.

.  .  .  .

128.  Plaintiff acquired the foregoing property by virtue of said funding through WAMU based on representations of Defendants, and each of them, that the loan was the best they could obtain for him, and that the loan was well

15

within Plaintiff'[s] financial needs and limitations.
. . . .

132. Plaintiff was in fact induced to and did take these loans based on the said fraudulent representations.

Even making the assumption that JPMorgan engaged in all of the alleged false representations, Plaintiff's fraud claim does not include the necessary Rule 9(b) particulars. Missing from the FAC are facts that specify, and tie together, *when* each of these false representations were made, *where* these misrepresentations were made, *what* specifically was stated that is false, and *why* each alleged misrepresentation is actually false. Accordingly, Plaintiff's second fraud claim is insufficiently pled under Rule 9(b) and is DISMISSED WITH LEAVE TO AMEND. Any amended pleading should address these deficiencies, and it should combine both fraud claims under one heading.

JPMorgan also moves to dismiss the fraud claim on the ground that Plaintiff has failed to plead sufficient facts, including JPMorgan's intent to induce reliance and Plaintiff's actual reliance on misrepresentation by JPMorgan.

If Plaintiff claims that JPMorgan committed its own common law fraud (apart from asserting liability on a fraudulent scheme or conspiracy theory), Plaintiff must allege facts relating to each element of fraud as to JPMorgan, including JPMorgan's intent to induce reliance and Plaintiff's actual reliance. To the extent Plaintiff asserts such a claim, it is insufficiently pled. There are no facts pled regarding JPMorgan's intent to induce reliance and Plaintiff's actual reliance on any misrepresentation by

JPMorgan.

JPMorgan's motion to dismiss the fraud claims is granted, and these claims are DISMISSED WITH LEAVE TO AMEND.

C.    Civil Code § 1572

Plaintiff alleges a separate claim under California Civil Code § 1572.  As JPMorgan correctly notes, this claim is redundant of Plaintiff's fraud claims.

Section 1572 states:

> Actual fraud, within the meaning of this Chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:
>
> 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
>
> 2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;
>
> 3. The suppression of that which is true, by one having knowledge or belief of the fact;
>
> 4. A promise made without any intention of performing it; or,
>
> 5. Any other act fitted to deceive.

This statute codifies elements of common law fraud. *See Lazar v. Superior Court*, 12 Cal. 4th 631, 644 (1996); *LiMandri, v. Judkins*, 52 Cal. App. 4th 326, 337 & n.5 (1997); *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 481 (1998).  Plaintiff has pled separate claims for common law

17

fraud, which already incorporate the elements in § 1572. Accordingly, Plaintiff's separate claim under § 1572 is redundant. Plaintiff's separate claim under § 1572 is DISMISSED WITHOUT LEAVE TO AMEND.

**D.   RESPA Claim**

The FAC asserts a RESPA claim under "§ 2607(b)." It appears, however, that Plaintiff also meant to assert a RESPA claim under § 2605. Regardless of which section Plaintiff intended to invoke, his RESPA claim is subject to dismissal.

**1. Claim Under § 2607(b)**

**a.   Sufficiency of Allegations**

Section 2607(b) of RESPA provides:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(b). With respect to this claim, the FAC alleges *in haec verba*:

> 149.   That the failure to respond to Plaintiff's R.E.S.P.A. [notice] constitute a violation of 12 USC 2607(b) and that therefore as provided by statute are entitled to and seek treble damages therefore in a sum subject to proof at time of trial.

Section "§ 2607(b)" has nothing to do with any alleged failure to respond to a RESPA notice (or a qualified written request). To the extent Plaintiff is really alleging a claim under "§ 2607(b)," Plaintiff has failed to allege facts sufficient to state a claim for relief. The complaint lacks non-conclusory factual content

18

plausibly suggesting that JPMorgan, or any other defendant, violated § 2607(b). For this reason, Plaintiff's alleged claim under § 2607(b) is DISMISSED WITH LEAVE TO AMEND.

### b.   Statute Of Limitations

Apart from factual insufficiency, JPMorgan argues that Plaintiff's § 2607 claim should be dismissed because it is barred by the statute of limitations and Plaintiff has not adequately pled any "extenuating circumstances to otherwise extend" the limitations period.

Under RESPA, any action pursuant to § 2607 may be brought within one year "from the date of the occurrence of the violation." 12 U.S.C. § 2614. "The primary ill that § 2607 is designed to remedy is the potential for 'unnecessarily high settlement charges,' § 2601(a), caused by kickbacks, fee-splitting, and other practices that suppress price competition for settlement services. This ill occurs, if at all, when the plaintiff pays for the [tainted] service, typically at the closing." *Snow v. First Am. Title Ins., Co.*, 332 F.3d 356, 359-60 (5th Cir. 2003); *see also Edwards* v. *First Am. Corp.*, 517 F. Supp. 2d 1199, 1205 (C.D. Cal. 2007). Consistent with this understanding, courts have considered the "occurrence of the violation" as the date the loan closed. *See Finley v. Lasalle Bank Nat'l Ass'n,* No. C 09-2965 SI, 2009 WL 3401453, at *2 n.3 (N.D. Cal. Oct. 20, 2009); *Kotok v. Homecomings Fin., LLC, No.* C09-622 RSM, 2009 WL 2057046, at *2 (W.D. Wash. July 14, 2009); *Ayala v. World Sav. Bank, FSB*, 616 F. Supp. 2d 1007, 1020 (C.D. Cal. 2009).

As alleged, Plaintiff obtained the loan on or about June 26,

2006.  He filed his FAC, which contained his RESPA claim, on or about September 4, 2009, more than three years later, well beyond the one-year period.  Accordingly, his claim under § 2607 is time-barred absent equitable tolling. *See Bassett v. Ruggles, No.* CV-F-09-528 OWW/SMW, 2009 WL 2982895, at *10-12 (E.D. Cal. Sept. 14, 2009) (concluding, in line with other cases, that RESPA claims may be equitably tolled).

"Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000); *see also Garcia v. Brockway*, 526 F.3d 456, 465 (9th Cir. 2008).  "Fairness, without more, is not sufficient justification to invoke equitable tolling . . . ." *Garcia*, 526 F.3d at 466.

With respect to the RESPA claim, the FAC alleges that the claim is "not time barred as the purpose of the fees were not explained to Plaintiff at the time of the closing."  Exactly how this allegation relates to Plaintiff's claim under § 2607(b) is unclear.  Plaintiff's allegations do not show how he was misled or otherwise prevented from discovering facts bearing on his claim under § 2607(b).  Plaintiff's allegations are insufficient to invoke equitable tolling.

Plaintiff's RESPA claim under § 2607 is DISMISSED on the grounds that it is insufficiently pled and time-barred.  Given Plaintiff's apparent attempt to invoke equitable tolling, Plaintiff is given LEAVE TO AMEND to plead facts suggesting that he was "unable to obtain vital information bearing on the existence of his claim," *Garcia*, 526 F.3d at 465, under § 2607.  Any amended

complaint should contains facts suggesting what information Plaintiff was unable to obtain, why he was unable to obtain the information, and how the information relates to a claim under § 2607.

2. **Claim Under § 2605**

The FAC alleges that on or about May 1, 2009, Plaintiff served on "Defendants WAMU and JPMORGAN, N.A." a "Notice of Dispute & Request for Accounting, Notice Pursuant to R.E.S.P.A.; Qualified Written Request." The contents of this purported Qualified Written Request are unclear. The "said defendants" allegedly "failed to respond to said notice by Plaintiff and have substantially failed to respond to all other communications and inquiries by Plaintiff."

Section 2605 (not 2607) of RESPA requires loan servicers of federally related mortgage loans to respond to written inquiries from borrowers known as "qualified written request(s)." 12 U.S.C. § 2605(e). More specifically, § 2605(e)(1)(A) requires a loan servicer "who receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan" to provide the borrower with a written acknowledgment of receipt within twenty days.

A "qualified written request" is a "written correspondence" that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the borrower's belief that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower. § 2605(e)(1)(B)(i)-(ii). The term "servicing" means "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making

the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." § 2605(i)(3).

After receiving a qualified written request under § 2605(e)(1)(A), no later than sixty days afterwards, the loan servicer is required to respond by making appropriate corrections to the borrower's account, if necessary, and, after conducting an investigation, providing the borrower with a written clarification or explanation. § 2605(e)(2).

To the extent the FAC attempts, however inartfully, to assert a claim under § 2605, the FAC fails to allege sufficient facts to state a claim.  The FAC fails to allege that JPMorgan was a loan servicer[4] under RESPA.   The FAC also fails to allege facts indicating that the written correspondence served on JPMorgan concerned the servicing of Plaintiff's loan, which is required to qualify the correspondence as a "qualified written request" under RESPA.   A conclusory allegation that the correspondence was a "Qualified Written Request" is insufficient. *See Twombly*, 550 U.S. at 555 (mere "labels and conclusions" are insufficient to state a claim); *see also Doe I v. Wal-Mart Stores, Inc*., 572 F.3d 677, 683 (9th Cir. 2009).  Because the FAC lacks sufficient facts to state a claim under § 2605 against JPMorgan, any such claim is DISMISSED WITH LEAVE TO AMEND.

JPMorgan also argues that to the extent Plaintiff asserts a

---

[4] **A loan "servicer" means "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. § 2605(i)(2).**

RESPA claim under § 2605, Plaintiff fails to allege facts regarding any actual damages he sustained as a result of the alleged violation.   In terms of civil liability, "[w]hoever fails to comply" with § 2605(e), or any provision of § 2605, is liable to the borrower for "any actual damages to the borrower as a result of the failure" and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000." § 2605(f)(1)(A)-(B).

Absent factual allegations suggesting that Plaintiff suffered actual damages, Plaintiff's RESPA claim is insufficiently pled and subject to dismissal. *Molina v. Washington Mutual Bank,* No. 09-CV-00894-IEG (AJB), 2010 WL 431439, at *7 (S.D. Cal. Jan. 29, 2010) (concluding that a RESPA claim was infirm because the plaintiffs "failed to sufficiently plead pecuniary loss"); *Lemieux v. Litton Loan Servicing, LP*, No. 2:09-cv-02816-JAM-EFB, 2009 WL 5206641, at *3 (E.D. Cal. Dec. 22, 2009) ("Plaintiffs have not pled facts showing they suffered actual damages.   Their failure to do so defeats their RESPA claim."); *Garcia v. Wachovia Mortgage Corp.*, __ F. Supp. 2d __, 2009 WL 3837621, at *10 (C.D. Cal. 2009) (dismissing RESPA claim because Plaintiff "failed to allege damages under Section 2605").   Plaintiff has not alleged any facts suggesting he sustained any actual damages as a result of a § 2605 violation, and his conclusory allegation that he "suffered damages" is insufficient.   Accordingly, to the extent the FAC asserts a § 2605 claim, it is insufficiently pled and DISMISSED WITH LEAVE TO AMEND.   Plaintiff is cautioned that Rule 11 of the Federal Rules of

Civil Procedure requires grounding in fact and in law to assert a claim.

E.   <u>Reformation</u>

Plaintiff's reformation claim cites California Civil Code § 3399 as providing the authority upon which his loan contract can be reformed.   That section reads:

> When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express *the intention of the parties*, it may be revised, on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value.

Cal. Civ. Code. § 3399 (emphasis added).   Nowhere in the FAC does Plaintiff allege or suggest that a mutual mistake was made between the contracting parties.   Plaintiff's reformation claim appears to be based on alleged fraud.

The "intention of the parties," as stated in § 3399, "refers to a single intention which is entertained by both parties." *Shupe v. Nelson*, 254 Cal. App. 2d 693, 700 (1967).   "The essential purpose of reformation is to reflect the intent of the parties." *Jones v. First Am. Title Ins. Co.*, 107 Cal. App. 4th 381, 389 (2003). "Although a court of equity may revise a written instrument to make it conform to the real agreement, it has no power to make a new contract for the parties . . . ." *American Home Ins. Co. v. Travelers Indemnity Co.*, 122 Cal. App. 3d 951, 963 (1981) (internal quotation marks omitted).

JPMorgan argues that Plaintiff's reformation claim is

24

insufficiently pled because there is no allegation that the instrument does not reflect the contracting parties' intent. This is true, there are no allegations that suggest that the loan contract, as drafted, did not reflect the intent of the contracting parties. Plaintiff merely concludes that the loan did not reflect "the intention of Plaintiff." Absent any allegations suggesting that the loan agreement does not reflect the contracting parties' intent, Plaintiff's reformation claim is insufficiently pled. In addition, to the extent Plaintiff's reformation claim is premised on fraud (or mistake), it is subject to the heightened pleading requirements of Rule 9(b) and fails for the same reasons as Plaintiff's claims for fraud. The necessary Rule 9(b) particulars are lacking.

Plaintiff's reformation claim is DISMISSED WITH LEAVE TO AMEND.[5]

---

[5] JPMorgan also argues that because it as assignee, not an original contracting party, no claim for reformation lies against it. JPMorgan does not cite any case law in support of this argument. "An assignment transfers the interest of the assignor to the assignee. Thereafter, [t]he assignee stands in the shoes of the assignor, taking his rights and remedies, subject to any defenses which the obligor has against the assignor prior to notice of the assignment." *Manson, Iver & York v. Black*, 176 Cal. App. 4th 36, 49 (2009). If Plaintiff could assert reformation against WAMU, there is no apparent reason why Plaintiff cannot maintain such a claim against JPMorgan who now "stands in the shoes" of WAMU. Moreover, California case law has recognized that reformation claims can be brought *by an assignee* to the contract. *See American Home Ins. Co. v. Travelers Indemnity Co.,* 122 Cal. App. 3d 951, 964 (1981); *Cal. Pacific Title Co. v. Sacramento Division v. Moore*, 229 Cal. App. 2d 114, 117 (1964). It would be incongruous to conclude that while an assignee can assert a reformation claim against the original contracting party, the original contracting party cannot

**F.   Quiet Title And Set Aside Foreclose**

   **1.   Quiet Title**

   Plaintiff brings a quiet title claim against "all Defendants," alleging that "due to the fraud of Defendants WAMU and JPMORGAN, the title to the subject property has been rendered unmarketable in that WAMU, JPMORGAN, QUALITY and their assigns, have caused to be recorded as against the subject property documents which have clouded Plaintiff's title thereto."

   The purpose of a quiet title action is to determine "all conflicting claims to the property in controversy and to decree to each such interest or estate therein as he may be entitled to." *Newman v. Cornelius*, 3 Cal. App. 3d 279, 284 (1970) (internal quotation marks omitted).   California Code of Civil Procedure § 761.020 provides that a complaint for quiet title "shall be verified" and shall include the following:

> (a) A description of the property that is the subject of the action.... In the case of real property, the description shall include both its legal description and its street address or common designation, if any.
>
> (b) The title of the plaintiff as to which a determination under this chapter is sought and the basis of the title....
>
> (c) The adverse claims to the title of the plaintiff against which a determination is sought.

---

assert a reformation claim against the assignee.   JPMorgan has not demonstrated that Plaintiff cannot assert a reformation claim against it because of its assignee status.   JPMorgan's argument on this ground does not supply a separate basis for dismissal.

26

**(d) The date as of which the determination is sought. If the determination is sought as of a date other than the date the complaint is filed, the complaint shall include a statement of the reasons why a determination as of that date is sought.**

**(e) A prayer for the determination of the title of the plaintiff against the adverse claims.**

Cal. Civ. Proc. Code § 761.020.  JPMorgan argues that the FAC does not allege the title of the Plaintiff, the basis of the title, and the adverse claims to the title.  JPMorgan is correct.  Plaintiff has not alleged these items.  Accordingly, Plaintiff's quiet title claim is DISMISSED WITH LEAVE TO AMEND.

JPMorgan also argues that Plaintiff's quiet title claim is duplicative of his fraud claims and does nothing to afford Plaintiff different or additional relief.  JPMorgan cites California Code of Civil Procedure § 760.030(a) in support of its argument.  That section provides "the remedy provided in this chapter [quiet title] is cumulative and not exclusive of any other remedy, form or right of action, or proceeding provided by law for establishing or quieting title to property."  Cal. Civ. Proc. Code § 760.030(a).  This section does not support JPMorgan's position.  This section confirms that a statutory quiet title action, like the one Plaintiff brings, does not exclude the use of other actions provided by law to establish or quiet title to property.  This section does not, as JPMorgan suggests, support the conclusion that if one claim in a case can already establish title to property, a separate statutory quiet title claim should be dismissed for redundancy.  JPMorgan's underdeveloped redundancy argument does not

27

supply a separate basis for dismissal.

### 2.   Set Aside Foreclosure

Nominally, Plaintiff has alleged a claim to "set aside foreclosure." This claim, as JPMorgan notes, is fatally flawed because a foreclosure sale has not yet occurred. Elsewhere in the FAC, Plaintiff alleges that Defendants "will foreclose" upon Plaintiff's property. Plaintiff's claim to "set aside foreclosure" is premature and therefore DISMISSED WITHOUT PREJUDICE to refiling.

### G.   UCL Claim

Plaintiff asserts a claim under California's Unfair Competition Law ("UCL"). Cal. Bus. & Prof. Code § 17200. Plaintiff's UCL claim, in its entirety, takes up one half a page in the FAC.

Section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." "[A] plaintiff must have suffered an 'injury in fact' and 'lost money or property as a result of the unfair competition' to have standing to pursue either an individual or a representative claim under the California Unfair Competition Law." *Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 849 (2008); *see also* Cal. Bus. & Prof. Code § 17204.

JPMorgan argues that Plaintiff has not alleged what money or property Plaintiff allegedly lost as a result of any purported violation of § 17200. The FAC is conclusory as to lost money. Plaintiff merely alleges that he has "incurred out of pocket monetary damages" and he "continues to incur monetary damages."

28

Moreover, Plaintiff has not alleged that he has lost any property, only that he "will" lose his personal residence if a non-judicial foreclosure occurs.  Plaintiff has not alleged any *facts* suggesting that he has lost money or property as a result of the alleged § 17200 violation. *See Saldate v. Wilshire Credit Corp.*, __ F.R.D.__, 2010 WL 582074, at *10 (E.D. Cal. Feb. 12, 2010) (dismissing UCL claim due to the "complaint's absence of facts" regarding the "money or property allegedly lost due to a UCL violation").  For this reason, Plaintiff's § 17200 claim is DISMISSED WITH LEAVE TO AMEND.

JPMorgan also contends that Plaintiff has otherwise failed to plead sufficient facts to support a UCL claim.  The UCL prohibits unfair competition including "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.  Because the statute is written in the disjunctive, it applies separately to business acts or practices that are (1) unlawful, (2) unfair, or (3) fraudulent. *See Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003).  "Each prong of the UCL is a separate and distinct theory of liability; thus, the 'unfair' practices prong offers an independent basis for relief." *Kearns*, 567 F.3d at 1127.

As to the unlawful prong, the UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law.  *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000).  As to the "unfair" prong, "[a]n unfair business practice is one that either 'offends an established public policy' or is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'"

29

*McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008) (quoting *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 3d 509, 530 (1984)).  As to the fraudulent prong, "fraudulent acts are ones where members of the public are likely to be deceived." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151-52 (9th Cir. 2008).  For UCL claims, "[a] plaintiff must state with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993).

Plaintiff's UCL claim has several deficiencies.  First, Plaintiff's UCL allegations do not specify the basis for his claim, i.e., whether it is based on an unlawful, unfair, or fraudulent practice, let alone state, with reasonable particularity, the facts supporting the statutory elements of the violation.  Second, to the extent Plaintiff asserts a UCL claim based on a violation of other law, his complaint fails to state a claim for a violation of RESPA, the RFDCPA, or any other law.  Accordingly, to the extent the UCL claim is predicated on the violation of other law, it is insufficiently pled.  Third, to the extent Plaintiff asserts a UCL claim that is based on or grounded in fraud, it must meet the requirements of Rule 9(b), *Kearns*, 567 F.3d at 1124-27, *Vess*, 317 F.3d at 1103-04, which it does not.  The complaint fails to specify what particular role JPMorgan played in the fraudulent scheme, when and where the scheme occurred, or details on the specific misrepresentation(s) involved in the fraudulent scheme.

Plaintiff's UCL claim is DISMISSED WITH LEAVE TO AMEND.

**H.    RFDCPA Claim**

Plaintiff alleges a claim for violation of § 1788.17 of the RFDCPA.   The RFDCPA forbids a "debt collector" from engaging in various unfair and oppressive methods to collect a consumer debt. *See* Cal. Civil Code §§ 1788.10-1788.16.   In addition, § 1788.17 of the RFDCPA makes it unlawful for a "debt collector" to violate provisions of the federal Fair Debt Collections Practices Act.

The RFDCPA was enacted "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts, and to require debtors to act fairly in entering into and honoring such debts." Cal. Civ. Code § 1788.1.   Under the RFDCPA, a "debt collector" is defined as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c).   The term "debt collection" means "any act or practice in connection with the collection of consumer debts," § 1788.2(b), and "consumer debt" means "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction," § 1788.2(f).   In turn, "consumer credit transaction" means "a transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person primarily for personal, family, or household purposes." § 1788.2(e).

The "law is clear that foreclosing on a deed of trust does not invoke the statutory protections of the RFDCPA." *Collins v. Power*

*Default Servs., Inc.,* No. 09–4838 SC, 2010 WL 234902, at *3 (N.D. Cal. Jan. 14, 2010) (collecting numerous cases).  "[F]oreclosure pursuant to a deed of trust does not constitute debt collection under the RFDCPA." *Castenda v. Saxon Mortgage Servs., Inc.*, __ F. Supp. 2d __, 2009 WL 4640673, at *3 (E.D. Cal. 2009); *see also Gonzalez v. First Franklin Loan Servs.,* No. 1:09-CV-00941 AWI-GSA, 2010 WL 144862, at *7 (E.D. Cal. Jan. 11, 2010) ("[F]oreclosure related actions . . . do not implicate the RFDCPA.").  The conduct Plaintiff complains of concerns foreclosure related actions in connection with his residential mortgage.  This conduct, as JPMorgan correctly argues, is not covered by the RFDCPA.  For this reason, Plaintiff's RFDCPA claim is subject to dismissal.

In his opposition brief, Plaintiff requests dismissal of this claim.  Accordingly, the RFDCPA claim is DISMISSED WITHOUT LEAVE TO AMEND.

I.   <u>Injunctive Relief</u>

With respect to certain claims, the FAC requests injunctive relief.  The FAC also asserts a separate claim for "Injunctive Relief Against Defendants."

"A request for injunctive relief by itself does not state a cause of action . . . ." *Mbaba Indymac Federal Bank F.S.B.,* No. 1:09-CV-01452-0WW-GSA, 2010 WL 424363, at *4 (E.D. Cal. Jan. 27, 2010); *see also Edejer v. DHI Mortgage Co.*, No. C. 09-1302 PJH, 2009 WL 1684714, at *10 (N.D. Cal. June 12, 2009).  An injunction is a remedy, not a separate claim or cause of action.  A pleading can, as the FAC does here, request injunctive relief in connection

with a substantive claim, but a separately pled claim or cause of action for injunctive relief is inappropriate.

Plaintiff's claim for injunctive relief is DISMISSED WITHOUT LEAVE TO AMEND.

## V.   CONCLUSION

For the reasons stated:

1.   As to the declaratory relief claim, the motion to dismiss is GRANTED and this claim is DISMISSED WITHOUT LEAVE TO AMEND.

2.   As to the fraud claims, the motion to dismiss is GRANTED, and these claims are DISMISSED WITH LEAVE TO AMEND.

3.   As to the California Civil Code § 1572 claim, the motion to dismiss is GRANTED, and this claim is DISMISSED WITHOUT LEAVE TO AMEND.

4.   As to the RESPA claim, the motion to dismiss is GRANTED, and this claim is DISMISSED WITH LEAVE TO AMEND.

5.   As to the reformation claim, the motion to dismiss is GRANTED, and this claim is DISMISSED WITH LEAVE TO AMEND.

6.   As to the quiet title claim, the motion to dismiss is GRANTED, and this claim is DISMISSED WITH LEAVE TO AMEND.

7.   As to the claim to set aside foreclosure, the motion to dismiss is GRANTED, and this claim is DISMISSED WITHOUT PREJUDICE.

8.   As to the UCL claim, the motion to dismiss is GRANTED and this claim is DISMISSED WITH LEAVE TO AMEND.

9.   As to the RFDCPA claim, the motion to dismiss is GRANTED

and this claim is **DISMISSED WITH LEAVE TO AMEND**.

10. As to the injunctive relief "claim," the motion to dismiss is **GRANTED**, and this claim is **DISMISSED WITHOUT LEAVE TO AMEND**.

In light of the ruling on the motion to dismiss, the motion for a more definite statement is **DENIED** as moot.

Any amended pleading is due within thirty (30) days of electronic service of this Memorandum Decision.

Defendant JPMorgan shall submit a form of order consistent with, and within five (5) days following electronic service of, this Memorandum Decision.

IT IS SO ORDERED.

Dated: ____March 19, 2010____          _____/s/ Oliver W. Wanger_____
                                        UNITED STATES DISTRICT JUDGE